C.D. Michel (SBN 144258)
Anna M. Barvir (SBN 268728)
Tiffany D. Cheuvront (SBN 317144)
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Ste. 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Fax: (562) 216-4445
Email: cmichel@michellawyers.com
  *Attorneys for Plaintiffs B & L Productions, Inc., Barry Bardack, Ronald J. Diaz, Sr.,
  John Dupree, Christopher Irick, Lawrence Walsh, Maximum Wholesale, Inc.,
  California Rifle & Pistol Association, Incorporated, South Bay Rod and Gun Club,
  Inc.*

Donald Kilmer (SBN 179986)
Law Offices of Donald Kilmer, APC
1645 Willow Street Suite 150
San Jose, CA 95125
Telephone: (408) 264-8489
Fax: (408) 264-8487
Email: Don@DKLawOffice.com
  *Attorney for Plaintiff Second Amendment Foundation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B & L PRODUCTIONS, INC., d/b/a CROSSROADS OF THE WEST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>22nd DISTRICT AGRICULTURAL ASSOCIATION, et al.,<br><br>Defendants. | CASE NO.: 3:19-cv-00134-CAB-NLS<br><br>**NOTICE OF LODGING [PROPOSED] FIRST SUPPLEMENTAL COMPLAINT FOR MONETARY, DECLARATORY & INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL**<br><br>Date:        May 1, 2020<br>Judge:       Hon. Cathy Ann Bencivengo<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT.<br><br>Action Filed: January 21, 2019 |

1

PLEASE TAKE NOTICE THAT Plaintiffs hereby lodge their [Proposed] First Supplemental Complaint for Monetary, Declaratory & Injunctive Relief; Demand For Jury Trial, a copy of which is attached here as Exhibit 1.

Dated: March 27, 2020                    **MICHEL & ASSOCIATES, P.C.**

                                         *s/ Anna M. Barvir*
                                         Anna M. Barvir
                                         Attorneys for Plaintiffs
                                         Email: abarvir@michellawyers.com

2
NOTICE OF LODGING SUPPLEMENTAL COMPLAINT

# EXHIBIT 1

C.D. Michel-SBN 144258
Anna M. Barvir-SBN 268728
Tiffany D. Cheuvront-SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Fax: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs B & L Productions, Inc., Barry Bardack, Ronald J. Diaz, Sr., John Dupree, Christopher Irick, Lawrence Walsh, Maximum Wholesale, Inc., California Rifle & Pistol Association, Incorporated, South Bay Rod and Gun Club, Inc.

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
1645 Willow Street Suite 150
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff Second Amendment Foundation

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B & L PRODUCTIONS, INC., d/b/a CROSSROADS OF THE WEST; BARRY BARDACK; RONALD J. DIAZ, SR.; JOHN DUPREE; CHRISTOPHER IRICK; LAWRENCE WALSH; MAXIMUM WHOLESALE, INC., d/b/a AMMO BROS.; CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED; SOUTH BAY ROD AND GUN CLUB, INC.; and SECOND AMENDMENT FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> GAVIN NEWSON, in his official capacity at Governor of the State of California; XAVIER BECERRA, in his official capacity as Attorney General of the State of California; STEPHAN SUMMER, in his official capacity as District Attorney of San Diego County; THOMAS MONTGOMERY, in his official capacity as County Counsel of | **CASE NO: 3:19-cv-00134-CAB-NLS** <br><br> **FIRST SUPPLEMENTAL COMPLAINT FOR MONETARY, DECLARATORY & INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL** <br><br> **(1) VIOLATION OF 42 U.S.C. § 1983 [FREE SPEECH-POLITICAL];** <br><br> **(2) VIOLATION OF 42 U.S.C. § 1983 [FREE SPEECH-MIXED POLITICAL/ COMMERCIAL];** <br><br> **(3) VIOLATION OF 42 U.S.C. § 1983 [FREE SPEECH-COMMERCIAL];** <br><br> **(4) VIOLATION OF 42 U.S.C. § 1983 [PRIOR RESTRAINT ON SPEECH];** <br><br> **(5) VIOLATION OF 42 U.S.C. § 1983 [RIGHT TO ASSEMBLY];** <br><br> **(6) VIOLATION OF 42 U.S.C. § 1983 [EQUAL PROTECTION];** |

1

1     San Diego County; 22nd DISTRICT
     AGRICULTURAL ASSOCIATION;
2     STEVE SHEWMAKER, PRESIDENT
     OF 22ND DISTRICT
3     AGRICULTURAL ASSOCIATION,
     in his official and individual capacity;
4     RICHARD VALDEZ, VICE
     PRESIDENT OF 22ND DISTRICT
5     AGRICULTURAL ASSOCIATION,
     in his official and individual capacity;
6     KAREN ROSSSECRETARY OF
     CALIFORNIA DEPARTMENT OF
7     FOOD & AGRICULTURE, in her
     official capacity; DOES 1-50;
8
         Defendants.
9

**(7) VIOLATION OF 42 U.S.C. § 1985 [CONSPIRACY TO VIOLATE CIVIL RIGHTS];**

**(8) VIOLATION OF 42 U.S.C. § 1983 [FREE SPEECH - POLITICAL];**

**(9) VIOLATION OF 42 U.S.C. § 1983 [FREE SPEECH-MIXED POLITICAL/ COMMERCIAL];**

**(10) VIOLATION OF 42 U.S.C. § 1983 [FREE SPEECH-COMMERCIAL];**

**(11) VIOLATION OF 42 U.S.C. § 1983 [PRIOR RESTRAINT ON SPEECH];**

**(12) VIOLATION OF 42 U.S.C. § 1983 [RIGHT TO ASSEMBLY];**

**(13)  VIOLATION OF 42 U.S.C. § 1983 [EQUAL PROTECTION].**

**Trial Date:  Not Set**

2

**INTRODUCTION**

1.      Plaintiff B & L PRODUCTIONS, INC., d/b/a CROSSROADS OF THE WEST ("Crossroads") has operated popular, safe, heavily regulated, legal and family-friendly gun show events as a business in California for over 30 years, including at the Del Mar Fairgrounds ("Venue").

2.      Crossroads produces gun show events at the Venue where like-minded individuals gather to engage in commerce related to, and necessary for, the lawfully and regulated exercise of Second Amendment rights for themselves, their exhibitors, their patrons, their customers, and the general public. This safe and regulated marketplace promotes public safety, even for people who do not attend gun shows; because it will have a tendency to reduce the unregulated transfer of firearms within San Diego County. Furthermore, by providing a convenient forum for Californians to exercise their right to acquire firearms locally, gun shows at the Venue will have the tendency to discourage the sale and importation of firearms from other states with less strict gun laws than California.

3.      Crossroads and their co-plaintiffs also use the Venue to engage in First Amendment activities that are both necessary and essential to the open, robust, and lawful exercise of their Second Amendment rights. Discussions include (but are not limited to): firearms, firearm technology, firearm safety, gun-politics, and gun-law (both pending legislation and proper compliance with existing law.) Other topics include: where to shoot, where and from whom to receive training, gun-lore, gun-repair, gunsmithing, gun-art, and many other topics, that arise from the right to acquire, own, possess, enjoy, and celebrate arms as a quintessentially American artifact with Constitutional significance. Crossroads, its co-plaintiffs, attendees, and vendor/exhibitors have the same right, privileges and immunities as any other lawful activity/event that now uses the Venue.

4.      Defendants are government actors who have discriminated against and intend to discriminate in the future against Plaintiffs by denying them the same

1  access to this public space as other lawful businesses. This discrimination is based

2  on irrational public policies that are based on flawed reasoning and dubious

3  conclusions relating to gun show operations and gun shows' impact on public safety.

4      5.      This discrimination by Defendants is also based on viewpoint animus,

5  because Defendants do not agree with, and actively oppose the cultural values and

6  the messages conveyed by and promoted by Plaintiffs at gun shows.

7      6.      This action seeks declaratory and injunctive relief against Defendants

8  for violations of the U.S. Constitution. This action also seeks damages against

9  Defendant  for lost profits, lost opportunities, diminished marketing value, and

10  added expense of advertising to the general public.

11      7.      This action also seeks reimbursement for the attorney fees, costs and

12  other expenses in bringing this action.

13      8.      The Defendants have engaged in action that violates Plaintiffs' rights

14  to free speech and assembly, the right to equal protection, the right to due process,

15  and privileges immunities enjoyed by all. Further, Defendants' actions constitute

16  prior restraint.

17      9.      Plaintiffs California Rifle & Pistol Association, Inc., South Bay Rod

18  and Gun Club, Inc., Second Amendment Foundation, Inc., Barry Bardack, Ronald J.

19  Diaz, Sr., John Dupree, Christopher Irick, Lawrence Michael Walsh, and Maximum

20  Wholesale, Inc., attend and participate in the Crossroads gun show. They associate

21  with like-minded people, participate in public discussions, attend informational

22  forums, distribute and collect information, make offers for sale, make offers to buy,

23  and engage in the legal and political discussions related to the Second Amendment

24  which are all protected forms of speech protected by the First Amendment.

25      10.      Defendants refuse to continue the longstanding relationship and annual

26  contracts or holding or securing dates that Crossroads has maintained for over 30

27  years.

28      11.      Plaintiffs seek declaratory judgment from this Court to clarify that

Defendants' actions against Plaintiffs are unconstitutional.

12.    Plaintiffs seek an injunction to stop the moratorium against gun shows at the Venue.

13.    Plaintiffs also seek injunctive relief to prohibit enforcement of A.B. 893, which the California Legislature improperly passed in order to circumvent the Court's preliminary injunction on the District's moratorium on gun show events at the Venue.

14.    In sum, Plaintiffs ask that the Court maintain the status quo and allow Plaintiffs to continue their 30-year tradition of contracting for and holding gun shows at this public Venue—until such time as Defendants can produce admissible, clear and convincing evidence, to a jury, that a ban on gun shows at the Venue will narrowly address a compelling government interest.

## THE PARTIES

## I.    Plaintiffs

15.    Plaintiff B & L PRODUCTIONS, INC., d/b/a CROSSROADS OF THE WEST, is a for-profit event promoter operating in several western states. Crossroads is in the business of promoting and organizing trade shows throughout the state of California and other western states, including their long-running gun show events held at the Del Mar Fairgrounds ("Venue") operated under the d/b/a Crossroads of the West ("Crossroads"). Crossroads currently is the largest vendor of gun show events in California and at the Del Mar Fairgrounds. The gun shows occupy thousands of square feet of the Venue. Typically, thousands of people attend the gun show on each of the weekends they are held. They have successfully produced and operated multiple safe, legal, and family friendly gun show events in California and at the Venue every year for over 30 years.

16.    Plaintiff BARRY BARDACK is a resident of El Cajon, California, and a part-time flight instructor. He regularly attends the gun shows at the Del Mar Fairgrounds where he purchases ammunition for his target shooting hobby and

FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    volunteers at the CRPA booth to talk to others about their rights, the importance of

2    membership in the CRPA, and the Second Amendment. If the gun show is banned

3    from the Del Mar fairgrounds, he believes that his closest vendor for being able to

4    purchase his bulk ammunition would be two hours from his home.

5         17.    Plaintiff RONALD J. DIAZ, SR., is a resident of Alpine, California,

6    and is a retired federal contractor. He regularly attends gun shows at the Del Mar

7    Fairgrounds to purchase reloading supplies. If the gun show is banned from the Del

8    Mar Fairgrounds, he believes he would have to drive several hours to get to a vendor

9    that could offer him the expertise and variety of reloading supplies available at the

10   Crossroads gun shows. Plaintiff Diaz also attends the Crossroads gun show events at

11   the Del Mar Fairgrounds to engage in expressive activities with like-minded people,

12   including discussions related to firearms, ammunition, and accessories, the shooting

13   sports, politics, and the Second Amendment.

14        18.    Plaintiff JOHN DUPREE is a resident of Alpine, California, and works

15   for the federal government. He regularly attends the Crossroads gun shows at the

16   Del Mar Fairgrounds. He is a competitive shooter and has the need to purchase bulk

17   ammunition in order to compete. If the gun show is banned from the Del Mar

18   Fairgrounds, he would have to drive several hours in order to find a vendor that he

19   could purchase bulk ammunition from as there is not a resource like this near his

20   home. Plaintiff Dupree also attends the Crossroads gun show events at the Del Mar

21   Fairgrounds to engage in expressive activities with like-minded people, including

22   discussions related to firearms, ammunition, and accessories, the shooting sports,

23   politics, and the Second Amendment.

24        19.    Plaintiff CHRISTOPHER PAUL IRICK is a resident of Carlsbad,

25   California, and attends the Crossroads guns shows at the Del Mar Fairgrounds. He is

26   self-employed and enjoys going to the shows for good prices on firearms and

27   accessories, as well as the variety of merchandise available at the events. Plaintiff

28   Irick also attends the Crossroads gun show events at the Del Mar Fairgrounds to

FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  engage in expressive activities with like-minded people, who hunt and support the
2  Second Amendment while learning about new and innovative products available to
3  firearms owners and sportsmen.

4       20.    Plaintiff LAWRENCE MICHAEL WALSH is the owner of Wholesale
5  Ammunition and is a regular vendor at the Crossroads gun shows at the Del Mar
6  Fairgrounds. His business currently does not have a physical store as they only sell
7  their product at gun shows across the state. Mr. Walsh's business also supplies
8  ammunition to many of the law enforcement agencies and officers in the state, some
9  of which purchase their ammunition from him at the gun shows because of the
10 amount available, the cost, and the variety they can find. Mr. Walsh enjoys being
11 able to talk with other Second Amendment supporters with like interests and views.
12 If the gun shows at the Del Mar Fairgrounds, or any of the other state venues, were
13 to be shut down, it would be devastating to Mr. Walsh's business and his ability to
14 reach a large number of people would be greatly diminished.

15      21.    Plaintiff MAXIMUM WHOLESALE, INC., d/b/a AMMO BROS., is a
16 for-profit corporation that was founded in 2002 in Cerritos, California. In 2009, their
17 second location opened in Ontario, California. And in 2015, the company opened
18 two more locations in southern California. Ammo Bros. is known for selling
19 firearms and ammunition to individuals and police departments. In 2016, they
20 opened a San Diego location, serving those stationed at Miramar Air Base and the
21 surrounding communities. Ammo Bros. regularly attends the Crossroads gun shows
22 at the Del Mar Fairgrounds as a vendor, selling firearms, ammunition, and related
23 merchandise.

24      22.    Plaintiff CALIFORNIA RIFLE & PISTOL ASSOCIATION,
25 INCORPORATED ("CRPA") is a nonprofit membership organization incorporated
26 under the laws of California, with headquarters in Fullerton, California. Among its
27 other activities, CRPA works to preserve and expand constitutional and statutory
28 rights of gun ownership, including the right to self-defense and the right to keep and

FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

bear arms. CRPA accomplishes this through their many educational offerings, publications, member engagement events, support of legislation, and legislative initiatives. CRPA has tens of thousands of members and supporters, many of whom (including Plaintiff Bardack) reside in San Diego County. Their members are firearm retailers, sportsmen, hunters, junior and youth competitors, Olympians, police officers, professionals, and loving parents. CRPA represents all its members both in their general interest as citizens and in their particular interests as supporters of those who choose to engage other like-minded people in their endeavors to lawfully own and possess firearms. CRPA also stands as an individual organization plaintiff because CRPA is a regular vendor (where they engage the public about constitutional rights, political issues, safety, and many other topics) and participant at the gun shows and stands to have injury to the organization itself as well as to its members.

23.     Plaintiff SOUTH BAY ROD AND GUN CLUB, INC. ("South Bay") is a private nonprofit corporation formed in 1955 with a mission to operate a properly managed nonprofit shooting club that is efficiently designed, contracted and safely operated with diligently maintained shooting ranges, support structures, and facilities so that all authorized members and guests may use the facility with pride, confidence, and satisfaction. South Bay endeavors to promote and encourage the safe handling and use of firearms. South Bay also stands as an individual organization plaintiff because it is a regular vendor and participant at the gun shows and stands to have injury to the organization itself as well as to its more than 4,000 members.

24.     Plaintiff SECOND AMENDMENT FOUNDATION, INC. ("SAF") is incorporated under the laws of the state of Washington and was founded in 1974. It is dedicated to promoting a better understanding about our Constitutional heritage to privately own and possess firearms through educational and legal action programs designed to better inform the public about gun control issues. Second Amendment

Foundation has been a pioneer in innovative defense of the right to keep and bear arms, through its publications and public education programs like the Gun Rights Policy Conference. Those publications and other SAF materials and information are offered at gun show events. Second Amendment Foundation also expends significant sums of money sponsoring public interest litigation like this lawsuit.

**II.    Defendants**

25.    Defendant GAVIN NEWSOM is the Governor of the State of California. As Governor, he is vested with "the supreme executive power" of the State and "shall see that the law is faithfully executed." Cal. Const. art. 5, §1. The injunctive and declaratory relief portions of this suit are brought against Governor Newsom in his official capacity.

26.    Defendant XAVIER BECERRA is the Attorney General of the State of California. He is the "chief law officer" of the State and has the duty to 'see that the laws fo the State are uniformly and adequately enforced." Cal. Const. art. 5, § 1. Additionally, Defendant Becerra has "direct supervision over every district attorney" within the State. *Id.* If, at any point a district attorney of the State fails to enforce adequately "any law of the State," Defendant Becerra must "prosecute any violations of the law." *Id.* Finally, Defendant Becerra, as Attorney General of the State of California, "shall assist any district attorney in the discharge" of duties when "required by the public interest or directed by the Governor. . . ." *Id.* The injunctive and declaratory relief portions of this suit are brought against Defendant Becerra in his official capacity.

27.    Defendant STEPHAN SUMMER is the District Attorney responsible for enforcing the law within the County of San Diego. Under the California Government Code, the District Attorney must prosecute "all actions for the recovery" of fines and penalties. Cal. Gov't Code§ 26521. The injunctive and declaratory relief portions of this suit are brought against District Attorney

FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

SUMMER in his official capacity.

28.     Defendant THOMAS MONTGOMERY is the County Counsel responsible for enforcing the law within the County of San Diego. In that capacity, he must "discharge all the duties vested in the district attorney." Cal. Gov't Code § 26529. The injunctive and declaratory relief portions of this suit are brought against County Counsel MONTGOMERY in his official capacity.

29.     Defendant 22nd DISTRICT AGRICULTURAL ASSOCIATION ("District") is a Governor-appointed Board of Directors that manages the state-owned Del Mar Fairgrounds public venue. The District is governed by a nine-member board, each member serving a four-year term. The District Board of Directors appoints a CEO charged with the daily operations of the facilities but maintains control over activities not delegated to the CEO, including contracting with those seeking to host gun show events at the Venue. It voted to ban all gun shows at the Venue through December 2019, while a non-public, ad hoc committee studies alleged safety and other concerns regarding the operation of such events at the Venue.

30.     Defendant KAREN ROSS[1] is the Secretary of the California Department of Food & Agriculture—the entity responsible for the policy oversight of the network of California fair venues. Through the Department, Defendant Ross issues guidance for governance and contracting to all agricultural districts throughout California (including Defendant District) and requires reporting from the districts on operational issues. The Department maintains an office of legal counsel for any actions brought against Agricultural Association Districts in the state.

---

[1] Defendant Ross was dismissed by the Court in an earlier order but is included here only to preserve the issue in the event an appeal must be filed and to avoid waiver.

FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

31.     Defendant STEVE SHEWMAKER,[2] who is sued in his individual and official capacities, is the President of the 22nd District Agricultural Board of Directors. He assigned himself (and just one other Board Member) to serve on the ad hoc committee responsible for developing the plan, in closed session, to effectively ban gun shows from the Del Mar Fairgrounds. Defendant Shewmaker expressed at a board meeting that he sought to ban gun shows because of personal experience with gun violence. He did not consider his duty to manage public property for all when he was looking to ban the gun shows at the Venue.

32.     Defendant RICHARD VALDEZ,[3] who is sued in his individual and official capacities, is the Vice President of the 22nd District Agricultural Board of Directors. He, along with Defendant Shewmaker, served on the ad hoc committee responsible for developing the plan, in closed session, to effectively ban gun shows from the Del Mar Fairgrounds. He did not consider his duty to manage public property for all when he was looking to ban the gun shows at the Venue.

33.     The true names and capacities of Defendants named as DOES 1 through 50, inclusive, are individual, corporate, associate or otherwise, and are unknown to Plaintiffs. They are, however, believed to be responsible in some way for Plaintiffs' loss and damages. Each Doe Defendant is, and at all times mentioned here was, a partner, agent, principal, co-conspirator, or are otherwise vicariously or directly responsible for the acts or omissions of the other defendants or themselves. They are each sued individually and are joined as party defendants. Plaintiffs thus sue each Doe Defendant under rules 15 and 21 of the Federal Rules of Civil Procedure. Plaintiffs are informed and believed that the Doe Defendants are all

_____

[2] Defendant Shewmaker was dismissed by the Court in an earlier order but is included here only to preserve the issue in the event an appeal must be filed and to avoid waiver.

[3] Defendant Valdez was dismissed by the Court in an earlier order but is included here only to preserve the issue in the event an appeal must be filed and to avoid waiver.

FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  California residents. Plaintiffs will amend this complaint to show such true names
2  and capacities of Doe Defendants when they have been ascertained.

3  **JURISDICTION AND VENUE**

4  34.  This action arises under 42 U.S.C. § 1983 to redress the deprivation of
5  rights secured by the United States Constitution. This Court has original jurisdiction
6  over these civil claims under 28 U.S.C. § 1331 because the matters in controversy
7  arise under the Constitution and laws of the United States, thus raising federal
8  questions. The Court also has jurisdiction under 28 U.S.C.§ 1343 (a)(3) because this
9  action is brought to redress the deprivation, under color of state law, of federally
10  secured rights, privileges, and immunities.

11  35.  The Court has authority to render declaratory judgments and to issue
12  permanent injunctive relief under 28 U.S.C. §§ 2201 and 2202 and Rule 65 of the
13  Federal Rules of Civil Procedure.

14  36.  Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the
15  22nd District Agricultural Association is located in San Diego County and all of the
16  acts giving rise to this action occurred in this District. Further, the state of California
17  maintains an office for service of process in San Diego County at 600 West
18  Broadway, Suite 1800, San Diego, California 92101.

19  **FACTUAL ALLEGATIONS**

20  **I.    Regulation of Gun Show Events in California**

21  37.  The state of California has the most rigorous regulatory regime for
22  commerce in firearms and ammunition in the United States. That regulatory regime
23  applies to the operation of gun show events throughout California. The laws related
24  to the acquisition and sale of firearms is arguably stricter at a gun show, than at
25  brick-and-mortar stores or internet sales.

26  38.  The state of California has already determined the manner in which
27  lawful gun shows must be operated under the California Penal Code. Requiring
28  more of gun show event promoters than state law dictates is an ultra vires action that

FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  exceeds the scope of state law.

2      39.    Only state approved, licensed gun show "producers" may operate a gun

3  show events in California. All gun show producers, including Plaintiff Crossroads,

4  must have an individual (the "promoter") who holds a valid "Certificate of

5  Eligibility" issued by the California Department of Justice.

6      40.    Gun show producers must also, among other things:

7          a.    Certify that they are familiar with all California laws regarding

8                gun shows, Cal. Penal Code § 27200;

9          b.    Possess a minimum of $1,000,000 liability insurance, *id.*;

10         c.    Provide an annual list of shows or events to be held to the

11               California Department of Justice, *id.*; and

12         d.    Notify the California Department of Justice no later than 30 days

13               prior to the gun show or event of any changes to the above, *id.*

14         e.    Make available to law enforcement a complete and accurate list

15               of all vendors that will participate in the show to sell, lease, or

16               transfer firearms. Cal. Penal Code § 27205.

17     41.    Gun show promoters must submit an annual event and security plan and

18 schedule to the California Department of Justice and any local law enforcement

19 agency. The plan must include:

20         a.    Type of show or event;

21         b.    Estimated number of vendors offering for sale or display

22               firearms;

23         c.    Estimated number of attendees;

24         d.    Number of entrances and exits at the event;

25         e.    Location, dates, and times of the event;

26         f.    Contact person and telephone number for both promoter and

27               facility;

28         g.    Number of sworn peace officers employed by the producer or

13

facility who will be present at the event;

  h. Number of non-sworn security personnel employed by the producer or the facility who will be present at the event; and

  i. Promoters must inform all prospective vendors of all California laws regarding gun shows. Cal. Penal Code §§ 27210, 27215.

42. Promoters of gun shows must also provide a list of all prospective vendors and designated firearm transfer agents who are licensed firearm dealers to the California Department of Justice no later than seven days prior to the event for the purpose of determining whether the vendor possess a valid license and are thus eligible to participate in the event. Cal. Penal Code § 27220.

43. If a vendor is not approved by the California Department of Justice or fails to comply with all applicable California law, they cannot participate. Cal. Penal Code § 27220.

44. If a promoter fails to inform all prospective vendors of California's state laws or fails to submit a list of all prospective vendors to the California Department of Justice, the event cannot commence. Cal. Penal Code § 27230.

45. A promoter must have written contracts with each vendor selling firearms at the event. Cal. Penal Code § 27235.

46. Promoters must post signs in a readily visible location at each public entrance to the event that includes all of the following notices:

- **"This gun show follows all federal, state, and local firearms and weapons laws, without exception."**
- **"Any firearm carried onto the premises by any member of the public will be checked, cleared of any ammunition, and secured in a manner that prevents it from being operated, and an identification tag or sticker will be attached to the firearm before the person is allowed admittance to the show."**
- **"No member of the public under the age of 18 years shall be**

14

**admitted to the show unless accompanied by a parent, grandparent, or legal guardian.”**

- **“All firearm transfers between private parties at the show shall be conducted through a licensed dealer in accordance with applicable state and federal laws.”**
- **“Persons possessing firearms in this facility must have in their immediate possession government-issued photo identification and display it upon the request to any security officer or any peace officer, as defined in Section 830.”** Cal. Penal Code § 27240(a).

47.     Producers must also post signs in a readily visible location at each entrance to the parking lot stating: “The transfer of firearms on the parking lot of this facility is a crime.” Cal. Penal Code § 27240(b).

48.     A willful failure of a producer to comply with any of California’s applicable laws is a misdemeanor punishable with a fine of up to $2,000 dollars and would render the producer ineligible for a gun show producer license for up to one year, which could cost a producer hundreds of thousands of dollars in lost revenue for a willful infraction. Cal. Penal Code § 272459(c).

49.     Actual firearm transfers are prohibited from taking place at any gun show in California absent very limited exceptions applicable only to law enforcement.[4] The firearm purchase process can be started through an onsite licensed “transfer dealer,” but the sale cannot be completed on site. Purchasers must pick up their purchase after a 10-day waiting period and background check at a

---

[4] Cal. Penal Code § 27310 (requiring all firearm transfers at gun shows to comply with state and federal law); *id.* § 26805 (prohibiting the sale and transfer of a firearm by a licensed dealer at any location other than the dealer’s premises as listed on their license but allowing dealer to prepare documents at a gun show in preparation for completion of the sale at the dealer’s premises); *id.* § 27545 (requiring all firearm transactions to be processed through a licensed dealer when neither party is a licensed firearm dealer).

FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

licensed firearm retailer at a different licensed location. There is no "Gun Show Loophole" at gun shows operated in accordance with California Law. Plaintiffs diligently operate all of their gun shows in accordance with state law, and take immediate remedial measures if irregularities are discovered.

50.   The Gun Show Act of 2000, California Penal Code sections 27200-27245, places even more restrictions on the operation of a gun show in California by requiring that:

    a.   Vendors not display, possess, or offer for sale any firearms, knives, or weapons for which possession or sale is prohibited;

    b.   Vendors acknowledge that they are responsible for knowing and complying with all applicable federal, state, and local laws dealing with the possession and transfer of firearms;

    c.   Vendors will not engage in activities that incite or encourage hate crimes;

    d.   Vendors will process all transfers of firearms through licensed firearms dealers as required by state law;

    e.   Vendors will verify that all firearms in their possession will be unloaded and that the firearms will be secured in a manner that prevents them from being operated except for brief periods, when the mechanical condition of the firearm is being demonstrated to prospective buyer;

    f.   Vendors provide all required information under Penal Code § 27320;

    g.   Vendors not display or possess black powder or offer it for sale;

    h.   Ammunition only be displayed in closed original factory boxes or other closed containers, with the only exception for showing the ammunition to a prospective buyer. On July 1, 2019, additional state-law restrictions on the sale of ammunition will

16

1               become effective and gun shows must comply;

2          i.     No member of the public under 18 years old may enter a gun

3               show unless accompanied by a parent or legal guardian;

4          j.     No person other than security personnel or law enforcement

5               possess both a firearm and ammunition for that firearm at the

6               same time, with the exception of vendors who are selling both.

7     51.    Even with all of the state and federal regulations that promoters and

8 vendors must comply with, Defendants continually attempt to place further

9 restrictions on Plaintiffs by requiring excessive security—more than is reasonably

10 necessary—and by requiring metal detectors for each door.

11     52.    Under information and belief, all of this was done in an attempt to

12 make producing the shows at the Venue so cost prohibitive that Plaintiffs would just

13 decide to go elsewhere—when this tactic did not discourage Plaintiffs, Defendants

14 sought to ban the gun show events all together.

15 **II.    The Gun Show Cultural Experience**

16     53.    Gun show events are a modern bazaar—a convention of like-minded

17 individuals who meet in this unique public forum that has been set aside by state and

18 local governments for all manner of commerce. Gun shows just happen to include

19 the exchange of products and ideas, knowledge, services, education, entertainment,

20 and recreation, related to the lawful uses of firearms. Those lawful uses include (but

21 are not limited to):

22          a.     Firearm safety training;

23          b.     Self-defense;

24          c.     Defense of others;

25          d.     Defense of community;

26          e.     Defense of state;

27          f.     Defense of nation;

28          g.     Hunting;

FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

h.      Target shooting;

i.      Gunsmithing;

j.      Admiration of guns as art;

k.      Appreciation of guns as technological artifacts; and

l.      Study of guns as historical objects.

54.     Only a small percentage (usually less than 40%) of the vendors actually offer firearms or ammunition for sale. The remaining vendors offer accessories, collectibles, home goods, lifestyle products, food and other refreshments.

55.     Gun shows in general, and the Del Mar show in particular, are a celebration of America's "gun culture" that is a natural and essential outgrowth of the constitutional rights that flow from the Second Amendment to the United States Constitution. Participating in that culture is one of the primary reasons people attend Crossroads gun shows as vendors, exhibitors, customers, and guests (even if particular vendors/attendees are not in the firearm business or in the market to buy a gun at a particular event.)

56.     Another reason that people attend gun show events is to learn about the technology and use of various firearms and ammunition when they are considering whether to buy or sell a firearm (or ammunition) and to exchange knowledge with experienced dealers and firearm enthusiasts that they cannot get anywhere else. *Teixeira v. County of Alameda*, No. 13-17132 (9th Cir. 2017).[5]

57.     Vendors at Crossroads gun shows are some of the same licensed vendors that have brick & mortar stores in the community, operate legally over the internet, and are registered with the state as lawful businesses. They sell legal products and enjoy being able to attend gun shows so they can better interact with

---

[5] The *Teixeira* court did not answer whether the Second Amendment includes a right to purchase a firearm. Plaintiffs allege, in good faith, that the right to keep and bear arms *necessarily* includes the rights to purchase and sell them. Indeed, those rights are paramount to the exercise of the Second Amendment.

FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

customers in a more meaningful and intimate way. This convention-like setting is of incalculable benefit to the gun-buying consumer and promotes public safety.

58.     Gun shows are a First Amendment forum where literature and information are shared, speakers provide valuable live lectures, classes are conducted, political forums are held where gun rights discussions take place, and candidates for political office can meet to discuss political issues, the government, and the Constitution with constituents who are part of the California gun culture. This forum is vitally important especially in California where government actors at all levels of government (federal, state & local) are openly hostile to the cultural values of the Second Amendment and where supporters of those cultural values are not considered "mainstream."

59.     Gun shows, are cultural marketplaces for those members of the "gun culture" who attend for the purpose of proselytizing their constitutional rights and to transmit those beliefs in patriotism and the rights of the individual on to the next generation. It is a place where parents take their children and grandparents take their grandchildren to share with them, among other things, the love of historic firearms, stories of American war heroes, and their love of hunting.

60.     The Crossroads show in Del Mar is a place where parents can learn how to protect their families and homes, as well as how to stay in compliance with the ever-changing California gun laws. It is a place where people can discuss the positions of political candidates and whether those values line up with their own beliefs in protecting the Second Amendment.

61.     The Crossroads shows are held and promoted, and considerable investment is made, precisely for the purpose of promoting and "normalizing" the gun culture and the constitutional principles that gun show participants hold dear.

62.     Anti-gun activist groups use false data and scare tactics to try to influence the decisions of politicians. Defendants wish to end this celebration of "gun culture" and Second Amendment rights because they do not understand the

culture or the people. They have thus attempted, first through a moratorium on gun show events and then through A.B. 893, to permanently deprive Plaintiffs of their right to engage in constitutionally protected conduct at the Venue.

63.     Promoting and facilitating the exercise of fundamental constitutional rights, even controversial ones, is conduct that is worthy of and entitled to protection by the United States Constitution.

**III.   The Del Mar Fairgrounds Venue**

64.     The Venue is owned by the state of California and managed by the Board of Directors of Defendant 22nd District Agricultural Association. (Ex. 1.) Defendant District is charged with maintaining the Venue and ensuring that is used for public purposes.

65.     Defendant Ross, as the Secretary of the California Department of Food & Agriculture, oversees the operation of the various agricultural districts in the state, including Defendant District. The Department, under Secretary Ross, provides policies and guidance for the operation of all agricultural districts in the state, including the use of facilities as directed by Department policy.

66.     The Department of Food & Agriculture maintains a *CDFA Contracts Manual for Agricultural Districts* ("Manual"). Section 6.25 of the Manual states that "[w]hether or not a fair rents out their facilities for gun shows is a policy decision to be made by the fair board and their community."

67.     Due to its large size and unique urban location, the Del Mar Fairground is a unique, publicly owned venue. There is no other public or private venue of similar size in the area. Effectively, the government has a monopoly on venues of this size and type in the area.

68.     The Venue is a state-owned property maintained and opened for use by the public. By virtue of being opened by the state for use by the public, it is a "public forum," from which the government may not generally exclude expressive activity. *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 569 (9th Cir. 1984)

20

(*quoting Perry Educ. Ass'n v. Perry Local Educators' Assn*, 460 U.S. 37, 45-46 (1983)).

69.     The Venue is used by many different public groups and is a major event venue for large gatherings of people to engage in expressive activities, including concerts, festivals, and industry shows.

70.     The Venue actively promotes the use of the property by the public through contracting for available space at the Venue.

71.     Defendants claim that the Venue complies with the Americans with Disability Act, implying that Defendants themselves consider it to be a "public venue" since private facilities need not comply with ADA requirements.

72.     The Venue's website states its mission is "[t]o manage and promote a world-class, multi-use, *public assembly facility* with an emphasis on agriculture, education, entertainment, and recreation in a fiscally sound and environmentally conscientious manner *for the benefit of all*." http://www.delmarfairgrounds.com/index.php?fuseaction=facilities.ada_info (emphasis added).

73.     The Venue has held  non-gun-show events in which criminal activity has taken place—including theft and a shooting. These criminal incidents are no more likely to happen at a gun show event than the non-gun-show event. The District has taken no actions to ban or impose a moratorium on these promoters or events. (Ex. 2.)

**IV.     Contracting to Rent the Del Mar Venue**

74.     The District has a process for securing returning contractors who would like to secure specific dates into future years before the contracts can be drafted and executed.

75.     Each year, returning and regular contractors, including Crossroads, submit preferred dates for the next calendar year, so the District can confirm availability and so Crossroads can begin to reserve vendors and materials for the show weekends.

21

76.     Due to the size and extensive planning that goes into producing gun show events, the District has for the past 30 years provided and held preferred dates for contractors until the contracts can fully be executed. The "hold" system essentially operates as a right of first refusal to the benefit of returning contractors. For example, if another contractor wanted the same preferred dates as Crossroads, the District would not allow another vendor to come in and take those dates from Crossroads even though there is no official contract in place yet.

77.     The "hold" system also provides the District with the security of knowing its venue is booked with experienced and knowledgeable repeat contractors that have a demonstrated record of running safe and profitable events at the Venue.

78.     This reservation system also permits the promoter to spend advertising dollars to promote the show. When governments announce plans to ban gun shows at particular venues, vendors and patrons rationally make plans to attend at other venues or seek other states to conduct their commerce. If/when the bans/moratorium is set aside, promoters must then spend additional resources to attract business to correct the false trial impression that shows have been cancelled.

79.     The District also considers the "hold" dates and shows during Venue budget discussions which are typically held in the year before the contracts are commenced.

80.     Upon information and belief, the "hold" system is widely used by similar state fair board venues and is standard industry practice. (Ex. 3.)

81.     On or about July 5, 2018, Venue staff sent e-mails to Crossroads confirming "holds" on Crossroads' preferred dates for gun show events at the Venue in 2019. (Ex. 4.)

82.     Crossroads, after doing business in this customary manner for 30 years, had no reason to doubt the District would honor the preferred "hold" dates or the staff emails confirming future dates which would lead to the eventual executed contract for the event space on the dates indicated.

FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

83.     On information and belief, all parties understood that the 2019 "hold" dates were binding and would allow for Crossroads and Venue staff to plan for future events at the Venue.

**V.     Defendants Ban Gun Show Events at the Venue**

84.     Even though Crossroads had secured "hold" dates for 2019, and despite the long history that Crossroads has with the Venue in operating safe and legal events, the political environment has become hostile toward gun show events and, more generally toward the "gun culture."

85.     Indeed, gun-show-banning activists are at work throughout the state and the country to ban *all* gun shows *everywhere*, not because they are "dangerous for the community," but because they do not subscribe to the same values as gun show promoters, vendors, and participants. (Ex. 5.)

86.     In 2017, gun-show-banning activists began pressuring Defendant District to prohibit gun show events at the Venue.

87.     These activists rely on unfounded fears about the security of gun show events, false claims that gun shows are inherently dangerous because they normalize the "gun culture," and stereotypes about the people that attend gun shows. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) (striking an ordinance requiring a special permit for a group home for the intellectually disabled, the Court cited direct evidence of negative attitudes toward persons with disabilities expressed by community members and recorded in the legislative history).

88.     In response, the District began a series of meetings and public-comment periods to determine whether Defendants would continue to contract with Crossroads or other promoters for the use of the Venue for gun show events.

89.     The District also engaged in communications with other government agencies and with Crossroads to determine whether gun shows at the Venue were operated in full compliance with state and federal law, and if the events pose any real danger to the community.

90.     Defendant Shewmaker also appointed a non-public, ad hoc committee of two members of the District (comprised of just himself and Defendant Valdez) to investigate the gun show operation at the Venue and report back to the District with recommendations for the continued use of the Venue for gun show events. The ad hoc "Contracts Committee" had no set timeframe for its activities.

91.     On April 23, 2018, then-Governor-Elect Gavin Newsom sent a letter to the District expressing his support for ending gun shows at the Venue.

92.     On August 24, 2018, Defendant Shewmaker responded to Newsom in a letter stating that "the time has come for the 22nd DAA to take action and we plan to do something on September 11th." This strong inference that the District intended to "take action" to put an end to gun show events suggests that Defendant Shewmaker intentionally and unlawfully discriminated against Plaintiffs, having already made a decision before the public hearing such that Plaintiffs could not receive a fair and unbiased hearing. *See Cinevision*, 745 F.2d at 571-77.

93.     In advance of the September 11, 2018 meeting, Plaintiffs' counsel wrote to all members of the District, informing them that prohibiting gun show events on public property would violate the rights of Crossroads, as well as vendors and individual participants of gun show events. (Ex. 6.) What's more, at least two licensed attorneys serve on the District—surely, they understand that viewpoint-based discrimination in the rental of public property violates the First Amendment unless supported by a compelling governmental interest.

94.     At the public hearing on September 11, 2018, the ad hoc "Contracts Committee" recommended that the District "not consider any contracts with the producers of gun shows beyond December 31st 2018 until such time as the District has put into place a more thorough policy regarding the conduct of gun shows that:

        a.     Considers the feasibility of conducting gun shows for only educational and safety training purposes and bans the possession of guns and ammunition on state property[;]

24

b.    Aligns gun show contract language with recent changes to state and federal law[;]

c.    Details an enhanced security plan for the conduct of future shows[;]

d.    Proposes a safety plan[;]

e.    Considers the age appropriateness of the event[;]

f.    Grants rights for the DAA to perform an audit to ensure full compliance with California Penal Code Sections 171b and 12071.1 and 1207.4." (Ex. 7.)

95.    The ad hoc "Contracts Committee" recommended that the District require the presentation of the proposed policy at the December 2019 meeting of the District.

96.    At the September 11, 2018 hearing, Defendant Shewmaker stated that he was done "drinking the Kool-Aid" regarding gun shows at the Venue. And he offered a story of a personal experience with gun violence unrelated to gun show events—appearing to rely on improper personal motives instead of what is best for the Venue or the constitutional rights of Plaintiffs. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

97.    On the other hand, in testimony before the District, the Del Mar Fairgrounds Chief Marketing Officer stated that "[w]e feel 100% comfortable with the security measures we take," while discussing the implementation of the security measures used for events at the Venue, including those implemented at gun shows. Matt Boone, *Security Concerns Linger Ahead of KAABOO After Shooting at Del Mar Fairgrounds*, ABC News 10 San Diego (Sept. 12, 2018), *available at* https://www.10news.com/news/security-concerns-linger-ahead-of-kaaboo-after-shooting-at-del-mar-fairgrounds. He did not suggest that the security measures taken at gun show events at the Venue were lacking in any way.

98.    Ultimately, the lengthy process of meetings, public comment, and

25

communications with stakeholders resulted in no finding that allowing the (already heavily regulated) gun show events to continue at the Venue posed a definite or unique risk to public safety. Indeed, the District presented no evidence of any safety concerns within the community that could be linked to the 30-year-old gun show-event at the Venue.

99.     To the contrary, banning highly regulated gun shows in California communities, like Del Mar, serves to distort the gun market, potentially pushing California gun buyers into less restrictive gun-buying environments.[6]

100.     Nonetheless, relying on contrived possibilities of unknown dangers and unfounded claims that prohibiting gun shows might prevent suicide and violent crime because the "gun culture" would be censored,[7] on September 11, 2018, Defendant District voted (8-to-1) to impose a one-year moratorium (for the year 2019) on gun show events at the Venue while they study potential safety concerns.

101.     Lacking any evidence that continuing to contract with Crossroads to host gun shows at the Venue raised any real public safety concerns, it is clear that

---

[6] Joyce Lupiani, *Nevada Gun Shows Tied to California Gun Violence*, KTNV (2017), https://www.ktnv.com/news/crime/study-nevada-gun-shows-tied-to-california-gun-violence (last visited Jan. 21, 2019); Brett Israel, Study*: Gun Deaths, Injuries in California Spike Following Nevada Gun Shows*, Berkeley News (2017), https://news.berkeley.edu/2017/10/23/embargoed-until-1023-2pm-pdt-study-gun-deaths-injuries-in-california-spike-following-nevada-gun-shows/ (last visited Jan. 21, 2019). *But see* Mariel Alper, Ph.D., & Lauren Glaze, Bureau of Justice Statistics, *Source and Use of Firearms Involved in Crimes: Survey of Prison Inmates, 2016* (2019), *available at* https://www.bjs.gov/content/pub/pdf/suficspi16.pdf (last visited Jan. 21, 2019); Garen J. Wintemute, et al., *Gun Shows and Gun Violence: Fatally Flawed Study Yields Misleading Results*, 100 Am. J. Pub. Health 1856-60 (2010), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2936974/ (last visited Jan. 21, 2019).

[7] *But see* Alvaro Castillo-Caniglia, Ph.D., et al., *California's Comprehensive Background Check and Misdemeanor Violence Prohibition Policies and Firearm Mortality*, Annals of Epidemiology (Oct. 11, 2018) (noting that, in California communities with the most stringent gun restrictions, there has been a marked increase in both property and violent crime).

1   the District ultimately gave into populist pressure from gun-show-banning activist
2   groups.

3       102.   In so doing, Defendants ignored their mission to maintain a "public
4   assembly facility… *for the benefit of all*" to the detriment of the civil rights of
5   Plaintiffs and others who attend and participate in gun shows. As a result, Plaintiffs
6   are being denied access to the public Venue because the District disagrees with the
7   content and viewpoint of their speech.

8   **VI.   Effect of the Gun Show Ban on Plaintiffs**

9       103.   Because of the time and resources needed to implement a gun show
10   event, Crossroads must plan its shows at least one year in advance. Because of the
11   late cancellation of the 2019 show schedule by Defendants, Crossroads has been
12   unable to find a suitable alternate location that offers the comparable space and
13   resources as the Venue.

14       104.   What's more, the government prohibits the building of similar venues
15   within their districts as a way of preventing competition for available space. As a
16   result, there are no venues within the same area that offer comparable space and
17   parking needed for gun show events.

18       105.   The use of a smaller private venue by Crossroads would result in
19   substantial loss of revenue and having to turn away many of the vendors and
20   attendees due to space constraints. It is not economically or practically feasible.

21       106.   Defendants' refusal to rent the Venue for lawful activity causes
22   economic damage to Crossroads in loss of event revenue, vendors, future show
23   dates, companies used as suppliers for gun show events, and business reputation and
24   goodwill that has been built by Plaintiff for more than 30 years.

25       107.   Defendants' refusal to contract with Crossroads for gun show events at
26   the Venue causes economic damage to the organizational plaintiffs, CRPA, SAF,
27   and South Bay, which use their vendor space, in part, to sell organization
28   memberships, advertise their educational courses, request donations, and sell

organization merchandise, like hats and stickers.

108.   Defendants' refusal to contract with Crossroads for gun show events at the Venue causes economic damage to the vendor plaintiff, Mike Walsh, who uses his vendor space, in part, to sell ammunition.

109.   Defendants' refusal to rent its publicly-owned "public assembly facility" to Crossroads for gun show events, a lawful business, violates each Plaintiffs' rights to engage in free speech and peaceful assembly, and their rights to equal protection and due process.

110.   Specifically, Defendants' conduct strips Plaintiffs Bardack, Diaz, Dupree, Irick, and Walsh, as well as the organizational plaintiffs, CRPA, SAF, and South Bay, of a vital opportunity to assemble and engage in pure speech about the rights and responsibilities of gun owners, the Second Amendment, patriotism, and political activism with like-minded individuals.

111.   Defendants' conduct complained of here also strips Crossroads of the right to promote gun show events, acting as a "clearinghouse" for both political speech and commercial speech.

112.   Defendants' conduct complained of here also strips Plaintiff Walsh of a vital opportunity to assemble and engage in lawful commercial speech, including the offer and acceptance of sales of ammunition and other firearm-related goods.

113.   Furthermore, even if the Court grants injunctive relief, Crossroads will have incurred damages in having to devote extraordinary advertising dollars to inform the public that the gun show has not been banned in San Diego County.[8]

**VIII.  California's Assembly Bill 893 (Gloria)**

114.   On or about October 11, 2019, Governor Newsom signed A.B. 893 into

---

[8] On or about June 18, 2019, this Court granted preliminary injunctive relief against the District's moratorium. After that order was entered, the parties began settlement efforts which are ongoing. During those efforts, the state of California passed, and the Governor signed, A.B. 893.

law. A true and correct copy of A.B. 893 is attached as Exhibit 8.

115.   A.B. 893 bars any "officer, employee, operator, lessee, or licensee of the [District]" from "contract[ing] for, authoriz[ing], or allow[ing] the sale of any firearm or ammunition on the property or in the buildings that comprise the Del Mar Fairgrounds . . .." (Ex. 8.)

116.   A.B. 893 has the same practical effect on Plaintiffs' gun show events as the District's moratorium by permanently banning the commercial sale of firearms and ammunition at the Venue.

117.   Further, A.B. 893 defies existing case law in the Ninth Circuit protecting the commercial speech associated with firearms sales on public property. *See Nordyke v. Santa Clara Cty.*, 110 F. 3d 707 (9th Cir. 1997).

118.   Although A.B. 893 purports to take effect on or after January 1, 2021, given the publicity associated with the initial moratorium imposed by the District, as well as the commercial necessities of planning and booking gun show events and the further requirements of securing contracts with vendors and advertising from various media outlets well in advance of the events, the future enforcement date of A.B. 893 has a present and concrete chilling effect on Plaintiffs' First Amendment rights.

## FIRST CAUSE OF ACTION

### Violation of Right to Free Speech Under U.S. Const., amend. I

### 42 U.S.C. § 1983

(By Plaintiffs CRPA, South Bay, SAF and All Individuals Against Defendants District, Shewmaker, Valdez, and Ross)

119.   Plaintiffs incorporate by reference paragraphs 1 through 118 of this Complaint as though fully set forth herein in their entirety.

120.   The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech. . .."

121.   The First Amendment's Freedom of Speech Clause is incorporated and made applicable to the states and their political subdivisions by the Fourteenth

1    Amendment to the United States Constitution and by 42 U.S.C. § 1983.

2       122.   The First Amendment does not tolerate the suppression of speech based

3    on the viewpoint of the speaker. Public property made available for lease by

4    community groups to engage in expressive activity must thus be available without

5    regard to the viewpoint sought to be expressed. *Cinevision*, 745 F.2d 560. Such

6    venues cannot be opened to some and closed to others, suppressing protected

7    expression, absent a compelling government interest. *Id.* at 571.

8       123.   The state of California owns the Venue, a fair venue. It is rented to the

9    public, including community-based organizations and businesses, for its use and

10   enjoyment, including for concerts, festivals, and industry shows.

11      124.   Defendant Ross, as the Secretary of the California Department of Food

12   & Agriculture, is responsible for the oversight of California fair venues. She has

13   authorized Defendants District, Shewmaker, and Valdez, to interpret, enforce, and

14   implement its policies for the operation and management of the Venue, including

15   CDFA Contract Manual section 6.25 (discretion to contract with gun show events).

16      125.   Defendants District, Shewmaker, and Valdez do, in fact, interpret,

17   implement, and enforce the policies of the Department of Food & Agriculture as

18   regards the Venue, including those policies and practices regarding rental of the

19   Venue for public use. As described herein, Defendants District, Shewmaker, and

20   Valdez have imposed a content-based restriction on Plaintiffs' speech in violation of

21   the First Amendment.

22      126.   Plaintiffs CRPA, SAF, South Bay, and Individuals Bardack, Diaz,

23   Dupree, Irick, and Walsh have attended in the past and wish to again attend

24   Crossroads of the West Gun Show at the Venue so they may exchange ideas,

25   information, and knowledge, as well discuss political issues and the importance of

26   protecting and defending the Second Amendment.

27      127.   Plaintiffs CRPA, SAF, South Bay, and Individuals Bardack, Diaz,

28   Dupree, Irick, and Walsh have a right under the First Amendment to use the Venue

FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

for their expressive activity on the same basis as other members of the public without regard to the viewpoints they seek to express.

128.   Defendants, however, placed a moratorium on all gun shows at the Venue in 2019 with the intention of permanently banning them—based on their opposition to Plaintiffs' "pro-gun rights" viewpoint—thereby denying Plaintiffs their rights under the First Amendment.

129.   There is no compelling governmental interest to support the shuttering of all gun show events at the Venue, which in turn destroys a vital outlet for the expression and exchange of ideas related to promoting and preserving the "gun culture" in California and elsewhere.

130.   Defendants acted with malice, oppression, and wanton and intentional disregard of the rights of Plaintiffs when it eliminated the promised dates for 2019 for the gun shows and refused to allow contracts with the Venue like other lawful businesses based upon a viewpoint held by Plaintiffs with which Defendants do not agree.

131.   As a direct and proximate result of Defendants' conduct, Plaintiffs CRPA, South Bay, SAF and Individuals Bardack, Diaz, Dupree, Irick, and Walsh have suffered irreparable harm, including the violation of their constitutional right to freedom of expression, entitling them to declaratory and injunctive relief and nominal damages.

## SECOND CAUSE OF ACTION

### Violation of Right to Free Speech Under U.S. Const., amend. I

### 42 U.S.C. § 1983

(By Plaintiff Crossroads Against Defendants District, Shewmaker, Valdez, and Ross)

132.   Plaintiffs incorporate by reference paragraphs 1 through 131 of this Complaint as though fully set forth herein in their entirety.

133.   The First Amendment provides that "Congress shall make no law . . .

31

1    abridging the freedom of speech. . .."

2        134.   The First Amendment's Freedom of Speech Clause is incorporated and

3    made applicable to the states and their political subdivisions by the Fourteenth

4    Amendment to the United States Constitution and by 42 U.S.C. § 1983.

5        135.   The First Amendment does not tolerate the suppression of speech based

6    on the viewpoint of the speaker. Public property made available for lease by

7    community groups to engage in expressive activity must thus be available without

8    regard to the viewpoint sought to be expressed. *Cinevision*, 745 F.2d 560. Such

9    venues cannot be opened to some and closed to others, suppressing protected

10   expression, absent a compelling government interest. *Id.* at 571.

11       136.   Event promoters, though they generally promote events for profit, "still

12   enjoy the protections of the First Amendment." *Id.* at 567. For "[t]he role of a

13   promoter in ensuring access to the public is at least as critical as the role of a

14   bookseller or theater owner and . . . is in a far better position than a concert goer or

15   individual performers to vindicate First Amendment rights and ensure public

16   access." *Id.* at 568. The conduct they engage in is protected expression.

17       137.   The state of California owns the Venue, a fair venue. It is rented to the

18   public, including community-based organizations and businesses, for its use and

19   enjoyment, including for concerts, festivals, and industry shows.

20       138.   Defendant Ross, as Secretary of the California Department of Food &

21   Agriculture, is responsible for the oversight of California fair venues. She has

22   authorized Defendants District, Shewmaker, and Valdez to interpret, enforce, and

23   implement its policies for the operation and management of the Venue, including

24   CDFA Contract Manual section 6.25 (discretion to contract with gun show events).

25       139.   Defendants District, Shewmaker, and Valdez do, in fact, interpret,

26   implement, and enforce the policies of the Department of Food & Agriculture as

27   regards the Venue, including those policies and practices regarding rental of the

28   Venue for public use. As described herein, Defendants District, Shewmaker, and

32

Valdez have imposed a content-based restriction on Crossroads' speech in violation of the First Amendment.

140.   Plaintiff Crossroads seeks to engage in protected speech at the Venue, a noted "public assembly facility," through the promotion and productions of events for lawful expressive activity, including events that bring together like-minded individuals to engage in pure political and educational speech, as well as commercial speech of vendor and individual participants to communicate offer and acceptance for the sale of goods and services.

141.   Plaintiff Crossroads has a right under the First Amendment to use the Venue for its expressive activity on the same basis as other members of the public without regard to the content or viewpoint it seeks to express and promote.

142.   Defendants, however, placed a moratorium on all gun shows at the Venue in 2019 with the intention of permanently banning them—based on their opposition to Crossroads' "pro-gun rights" viewpoint—thereby denying Plaintiff of its rights under the First Amendment.

143.   Defendants' policy and practice of permitting organizers of non-gun-show events to use the Venue for their events, while denying Crossroads and all gun show promotors access, bars Plaintiff from engaging in expression based on the content and viewpoint of its speech.

144.   There is no compelling governmental interest to support the shuttering of all gun show events at the Venue, which in turn destroys a vital outlet for the expression and exchange of ideas related to promoting and preserving the "gun culture" in California and elsewhere.

145.   Indeed, Defendants' refusal to rent the publicly owned facility to a lawful business (that has, for 30 years, conducted safe and successful events at the Venue) does not advance any public interest and subjects Plaintiff Crossroads to the deprivation of free speech rights secured by the First Amendment.

146.   Defendants acted with malice, oppression, and wanton and intentional

33

disregard of the rights of Crossroads when it eliminated the promised dates for 2019 and refused to contract with Crossroads for use of the public Venue for expressive activity based the content and viewpoint of Plaintiff Crossroads' speech.

147.   As a direct and proximate result of Defendants' conduct, Plaintiff Crossroads has suffered irreparable harm, including the violation of its constitutional right to freedom of expression, entitling Plaintiff to declaratory and injunctive relief and nominal damages.

## THIRD CAUSE OF ACTION

### Violation of Right to Free Speech Under U.S. Const., amend. I

### 42 U.S.C. § 1983

(By Plaintiffs Walsh and Ammo Bros. Against Defendants District, Shewmaker, Valdez, and Ross)

148.   Plaintiffs incorporate by reference paragraphs 1 through 147 of this Complaint as though fully set forth herein in their entirety.

149.   The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech. . .."

150.   The First Amendment's Freedom of Speech Clause is incorporated and made applicable to the states and their political subdivisions by the Fourteenth Amendment to the United States Constitution and by 42 U.S.C. § 1983.

151.   The First Amendment does not tolerate the suppression of speech based on the viewpoint of the speaker. Public property made available for lease by community groups to engage in expressive activity must thus be available without regard to the viewpoint sought to be expressed. *Cinevision*, 745 F.2d 560. Such venues cannot be opened to some and closed to others, suppressing protected expression, absent a compelling government interest. *Id.* at 571.

152.   The state of California owns the Venue, a fair venue. It is rented to the public, including community-based organizations and businesses, for its use and enjoyment, including for concerts, festivals, and industry shows.

FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

153.   Defendant Ross, as Secretary of the California Department of Food & Agriculture, is responsible for the oversight of California fair venues. She has authorized Defendants District, Shewmaker, and Valdez to interpret, enforce, and implement its policies for the operation and management of the Venue, including CDFA Contract Manual section 6.25 (discretion to contract with gun show events).

154.   Defendants District, Shewmaker, and Valdez do, in fact, interpret, implement, and enforce the policies of the Department of Food & Agriculture as regards the Venue, including those policies and practices regarding rental of the Venue for public use. As described herein, Defendants District, Shewmaker, and Valdez have imposed a content-based restriction on Plaintiff Walsh's speech in violation of the First Amendment.

155.   Plaintiffs Walsh and Ammo Bros. have attended in the past and wish to again attend Crossroads gun shows at the Venue to engage in lawful commercial speech with individual attendees.

156.   Plaintiffs Walsh and Ammo Bros. have a right under the First Amendment to use the Venue for expressive activity on the same basis as other members of the public without regard to the viewpoints they seek to express and promote.

157.   Defendants, however, placed a moratorium on all gun shows at the Venue in 2019 with the intention of permanently banning them—based on their opposition to Plaintiff Walsh's "pro-gun rights" viewpoint—thereby denying Plaintiff Walsh of his rights under the First Amendment.

158.   Defendants' policy and practice of permitting organizers of non-gun-show vendors to use the Venue, while denying Plaintiffs Walsh and Ammo Bros., as well as all gun show vendors the same access, bars Plaintiffs from engaging in expression based on the content and viewpoint of his speech.

159.   There is no substantial governmental interest to support the shuttering of all gun show events at the Venue, which in turn destroys a vital outlet for

commercial speech related to the sale of firearms, ammunition, and firearms accessories.

160.   Even if there were a substantial governmental interest in restricting gun shows and the commercial speech that occurs at such events, banning gun show events at the Venue altogether is more extensive than necessary to serve any such interest.[9]

161.   As a direct and proximate result of Defendants' conduct, Plaintiffs Walsh and Ammo Bros. have suffered irreparable harm, including the violation of their constitutional right to freedom of expression, entitling them to declaratory and injunctive relief and nominal damages.

## FOURTH CAUSE OF ACTION

### Prior Restraint on Right to Free Speech Under U.S. Const., amend. I
### 42 U.S.C. § 1983

(By All Plaintiffs Against Defendants District, Shewmaker, Valdez, and Ross)

162.   Plaintiffs incorporate by reference paragraphs 1 through 161 of this Complaint as though fully set forth herein in their entirety.

163.   The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech. . .."

164.   The First Amendment's Freedom of Speech Clause is incorporated and made applicable to the states and their political subdivisions by the Fourteenth Amendment to the United States Constitution and by 42 U.S.C. § 1983.

165.   The First Amendment affords special protection against policies or orders that impose a previous or prior restraint on speech. "[P]rior restraints on speech and publication are the most serious and least tolerable infringement on First Amendment Rights." *Ass'n for L.A. Deputy Sheriffs v. L.A. Times Commc'ns LLC*,

---

[9] *See Nordyke v. Santa Clara County*, 110 F.3d 707 (9th Cir. 1997) (holding that a ban on the sale of firearms on county-owned land was overbroad as abridging commercial speech associated with the sale of lawful products).

1   239 Cal. App. 4th 808, 811 (2015), citing *Neb. Press Ass'n v. Stuart*, 427 U.S. 539,

2   559 (1976). A prior restraint is particularly egregious when it falls upon the

3   communication of news, commentary, current events, political speech, and

4   association. *N.Y. Times Co. v. United States*, 403 U.S. 713, 715 (1971).

5   166.   Prior restraint also involves the "unbridled discretion doctrine" where a

6   policy, or lack thereof, allows for a single person or body to act at their sole

7   discretion, without regard for any constitutional rights possessed by the person upon

8   which the action is taken, and where there is no remedy for challenging the

9   discretion of the decision makers. *Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S.

10  750, 757 (1988).

11  167.   Further, denying or cancelling a government contract in anticipation

12  that an event or its attendees will violate the law, where there is no more chance of

13  criminal elements surfacing at such event than at any other event, is an unlawful

14  prior restraint on expression. *See Se. Promos., Ltd., v. Conrad*, 420 U.S. 546 (1975).

15  168.   Defendant Ross, as the Secretary of the California Department of Food

16  & Agriculture, is responsible for the oversight of California fair venues. Through the

17  Department, she issues guidance giving local agricultural district boards full

18  discretion to determine who they issue contracts to for the use of their facilities. This

19  recommendation does not currently take into account the potential for a violation of

20  constitutional rights, like free speech and assembly.

21  169.   Defendant Ross, as Secretary of the California Department of Food &

22  Agriculture, has authorized Defendants District, Shewmaker, and Valdez to

23  interpret, enforce, and implement its policies for the operation and management of

24  the Venue, including CDFA Contract Manual section 6.25 (discretion to contract

25  with gun show events).

26  170.   Defendants District, Shewmaker, and Valdez do, in fact, interpret,

27  implement, and enforce the policies and guidance of the Department of Food &

28  Agriculture as regards the Venue, including those policies and practices regarding

1  rental of the Venue for public use.

2      171.   Defendant District does not have any policy for determining who will

3  win a contract from the District and who will not, except that the District is the sole

4  and final decision maker on all contracts. There is no policy outlining requirements

5  for contracting or detailing who and what activities are allowed at the public

6  venue—only that the District makes the decision on any contract brought before it.

7      172.   Defendants District, Shewmaker, and Valdez voted to prohibit

8  promoters and vendors from contracting for use of the Venue to host gun show

9  events, thus quashing their speech and the speech of vendors and attendees of the

10  show.

11      173.   Defendants' policies and practices complained of here impose an

12  unconstitutional prior restraint because they vest local agricultural district boards

13  and board members, including Defendants District, Shewmaker, and Valdez, with

14  unbridled discretion to permit or refuse protected expression by members of the

15  public, including Plaintiffs.

16      174.   Defendants' policies and practices complained of here give unbridled

17  discretion to local agricultural district boards and board members to decide what

18  forms of expression members of the public may engage in on at the Venue and to

19  ban any other expression at the whim of those boards and board members in

20  violation of the First Amendment.

21      175.   As a direct and proximate result of Defendants' conduct, Plaintiffs have

22  suffered irreparable harm, including the violation of their constitutional right to

23  freedom of expression, entitling them to declaratory and injunctive relief and

24  nominal damages.

25                          **FIFTH CAUSE OF ACTION**

26  **Violation of Right to Assembly and Association Under U.S. Const., amend. I**

27                              **42 U.S.C. § 1983**

28      (By All Plaintiffs Against Defendants District, Shewmaker, Valdez, and Ross)

176.   Plaintiffs incorporate by reference paragraphs 1 through 175 of this Complaint as though fully set forth herein in their entirety.

177.   The First Amendment provides recognizes and protects the rights to association and assembly. Indeed, "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." *NAACP v. Alabama*, 377 U.S. 288, 462 (1958).

178.   Plaintiffs are attempting to engage in their protected right to free assembly and association lawful activities that bring together like-minded individuals to engage in lawful commerce, expressive activities, including political and educational speech, and fellowship.

179.   Defendants violate Plaintiffs' right to freedom of assembly by denying them the right to use the Venue, a "public assembly facility", to assemble and engage in political and other types of expression—a right Defendants extend to other members of the public so long as they are not meeting for the purposes of holding a gun show event.

180.   Defendants have no legitimate and substantial interest in prohibiting gun show events and, by extension, the rights of Plaintiffs to associate and assemble at the Venue.

181.   But even if Defendants had a "legitimate and substantial" interest in barring Plaintiffs from assembling at the Venue, they have imposed an unconstitutional and overly broad restriction on Plaintiffs' rights to assembly. *See id.* at 307.

## SIXTH CAUSE OF ACTION

### Violation of the Right to Equal Protection Under U.S. Const., amend. XIV

### 42 U.S.C. § 1983

(By All Plaintiffs Against Defendants District, Shewmaker, Valdez, and Ross)

182.   Plaintiffs incorporate by reference paragraphs 1 through 181 of this Complaint as if fully set forth herein in their entirety.

183.   The Fourteenth Amendment to the United States Constitution, enforceable under 42 U.S.C. § 1983, provides that no state shall deny to any person within its jurisdiction the equal protection of the laws.

184.   Generally, equal protection is based upon protected classes of person who are similarly situated; however, individuals who suffer irrational and intentional discrimination or animus can bring claims of equal protection where the government is subjecting only the Plaintiffs to differing and unique treatment compared to others who are similarly situated, *Engquist v. Ore. Dept. of Agric.*, 553 U.S. 591 (2008), even if not based on group characteristics, *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

185.   Disparate treatment under the law, when one is engaged in activities that are fundamental rights, is actionable under the Equal Protection Clause of the Fourteenth Amendment. *Police Dep't of Chic. v. Mosley*, 408 U.S. 92 (1972); *Carey v. Brown*, 447 U.S. 455 (1980).

186.   Although Plaintiff Crossroads operates a legal and legitimate business and the Venue is suitable for the purposes of hosting a gun show at its public facility, the District refuses to allow Crossroads to use the Venue for its gun shows, preventing Plaintiffs from equally participating in the use of the public venue.

187.   Defendants' refusal to permit Plaintiffs equal access to the Venue for its promotion of gun shows does not further any compelling governmental interest.

188.   Defendants' refusal to allow Plaintiffs equal use of the public facility while continuing to allow contracts for the use of the facility with other similarly situated legal and legitimate businesses is a violation of Plaintiffs' right to equal protection under the law because it is based on a "bare desire to harm a politically unpopular group." *U.S. Dep't of Agric v. Moreno*, 413 U.S. 528, 534 (1973).

189.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm, including the violation of their constitutional right to equal protection under the law, entitling them to declaratory and injunctive relief

1   and nominal damages.

**SEVENTH CAUSE OF ACTION**

**Conspiracy to Violate Civil Rights[10]**

**42 U.S.C. § 1985**

(By All Plaintiffs Against All Defendants)

190.   Plaintiffs incorporate by reference paragraphs 1 through 189 of this Complaint as if fully set forth herein in their entirety.

191.   Defendants Shewmaker and Valdez, together with Defendant District and unnamed third parties, concocted and implemented a plan to prohibit gun show events at the publicly owned Venue based on animus toward Plaintiffs and in light of the viewpoint Plaintiffs sought to express at gun show events by creating a non-public committee what limited the public input into the process and where only Defendants Shewmaker and Valdez could participate, thus showing that the two Defendants has a "meeting of the minds" as to the proposed ban of the gun shows at the Venue.

192.   Defendants Shewmaker, Valdez, and District did not provide a fair and unbiased hearing for Plaintiffs—indeed, they failed to use consistent, content-neutral standards to evaluate Plaintiffs' activities, rejected favorable reports from their own Del Mar Fairgrounds Directors of Security and local law enforcement, allowed politically charged groups to sway their decisions, relied on their personal biases against guns, and publicly stated that something must be done about the gun shows.

193.   The conduct of Defendants Shewmaker, Valdez, and District was made possible because Defendant Ross, as the Secretary of the California Department of Food & Agriculture, vested Defendant District with unfettered power to discriminate against members of the public in the rental of state-owned fairgrounds property (the

---

[10] The Seventh Cause of Action for Conspiracy to Violate Civil Rights was dismissed by the Court in an earlier order but is included here only to preserve the issue in the event an appeal must be filed and to avoid waiver.

FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Venue). The lack of policies that protect constitutional rights of groups and individuals and a lack of parameters of authority within which Defendants Shewmaker, Valdez, and District are required to work, served as a direct avenue for Defendants to willfully, wantonly, and maliciously act against Plaintiffs.

194.   Defendants Shewmaker, Valdez, and District considered arbitrary and unlawful factors in disapproving of Plaintiffs' activities stating repeatedly that gun shows are not "family friendly" and not the type of event that should be hosted at the Venue, this making arbitrary judgements about what should be "family friendly" and "good" for all people. The term "family friendly" does not set a standard sufficient to make a determination as it is vague and undefined.

195.   By taking this action, Defendants Shewmaker, Valdez, District, and unnamed third parties conspired to deny civil liberties guaranteed by the First and Fourteenth Amendments in violation of 42 U.S.C. § 1985.

### EIGHTH CAUSE OF ACTION

### Violation of Right to Free Speech Under U.S. Const., amend. I

### 42 U.S.C. § 1983

(By Plaintiffs CRPA, South Bay, SAF, and All Individuals Against Defendants Newsom, Becerra, Summer, Montgomery, and District)

196.   Plaintiffs incorporate by reference paragraphs 1 through 195 of this Complaint as though fully set forth herein in their entirety.

197.   The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech. . .."

198.   The First Amendment's Freedom of Speech Clause is incorporated and made applicable to the states and their political subdivisions by the Fourteenth Amendment to the United States Constitution and by 42 U.S.C. § 1983.

199.   The First Amendment does not tolerate the suppression of speech based on the viewpoint of the speaker. Public property made available for lease by community groups to engage in expressive activity must thus be available without

regard to the viewpoint sought to be expressed. *Cinevision*, 745 F.2d 560. Such venues cannot be opened to some and closed to others, suppressing protected expression, absent a compelling government interest. *Id.* at 571.

200.   The state of California owns the Venue, a fair venue. It is rented to the public, including community-based organizations and businesses, for its use and enjoyment, including for concerts, festivals, and industry shows.

201.   Defendants Newsom, Becerra, Summers, and Montgomery are the state and local actors responsible for ensuring that A.B. 893 is adequately enforced and thus have the authority to prosecute violations of A.B. 893.

202.   Defendant District interprets, implements, and enforces state laws and policies as regards the Venue, including A.B. 893.

203.   Plaintiffs CRPA, SAF, South Bay, and Individuals Bardack, Diaz, Dupree, Irick, and Walsh have attended in the past and wish to again attend Crossroads of the West Gun Show at the Venue so they may exchange ideas, information, and knowledge, as well discuss political issues and the importance of protecting and defending the Second Amendment.

204.   Plaintiffs CRPA, SAF, South Bay, and Individuals Bardack, Diaz, Dupree, Irick, and Walsh have a right under the First Amendment to use the Venue for their expressive activity on the same basis as other members of the public without regard to the viewpoints they seek to express.

205.   Defendants' enforcement of A.B. 893, which prohibits the sale of firearms and ammunition at the Venue with the purpose and intention (or at least the effect) of ending gun show events at the Venue, is an impermissible content-based restriction of speech. Such enforcement will have a chilling effect on Plaintiffs' First Amendment rights prior to January 1, 2021 and will constitute a direct violation of the First Amendment beginning on January 1, 2021.

206.   There is no compelling (or even legitimate) governmental interest to support the ban on the commercial sales of all firearms and ammunition at the

43

Venue, effectively shuttering gun show events at the Venue and destroying a vital outlet for the expression and exchange of ideas related to promoting and preserving the "gun culture" in California and elsewhere.

207.    As a direct and proximate result of Defendants' conduct, Plaintiffs CRPA, South Bay, SAF and Individuals Bardack, Diaz, Dupree, Irick, and Walsh have suffered irreparable harm, including the violation of their constitutional right to freedom of expression, entitling them to declaratory and injunctive relief and nominal damages.

**NINTH CAUSE OF ACTION**

**Violation of Right to Free Speech Under U.S. Const., amend. I**

**42 U.S.C. § 1983**

(By Plaintiff Crossroads Against Defendants Newsom, Becerra, Summer, Montgomery, and District)

208.   Plaintiffs incorporate by reference paragraphs 1 through 207 of this Complaint as though fully set forth herein in their entirety.

209.   The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech. . .."

210.   The First Amendment's Freedom of Speech Clause is incorporated and made applicable to the states and their political subdivisions by the Fourteenth Amendment to the United States Constitution and by 42 U.S.C. § 1983.

211.   The First Amendment does not tolerate the suppression of speech based on the viewpoint of the speaker. Public property made available for lease by community groups to engage in expressive activity must thus be available without regard to the viewpoint sought to be expressed. *Cinevision*, 745 F.2d 560. Such venues cannot be opened to some and closed to others, suppressing protected expression, absent a compelling government interest. *Id.* at 571.

212.   Event promoters, though they generally promote events for profit, "still enjoy the protections of the First Amendment." *Id.* at 567. For "[t]he role of a

44

promoter in ensuring access to the public is at least as critical as the role of a bookseller or theater owner and . . . is in a far better position than a concert goer or individual performers to vindicate First Amendment rights and ensure public access." *Id.* at 568. The conduct they engage in is protected expression.

213.   The state of California owns the Venue, a fair venue. It is rented to the public, including community-based organizations and businesses, for its use and enjoyment, including for concerts, festivals, and industry shows.

214.   Defendants Newsom, Becerra, Summers, and Montgomery are the state and local actors responsible for ensuring that A.B. 893 is adequately enforced and thus have the authority to prosecute violations of A.B. 893.

215.   Defendant District interprets, implements, and enforces state laws and policies as regards the Venue, including A.B. 893.

216.   Plaintiff Crossroads seeks to engage in protected speech at the Venue, a noted "public assembly facility," through the promotion and production of events for lawful expressive activity, including events that bring together like-minded individuals to engage in pure political and educational speech, as well as commercial speech of vendor and individual participants to communicate offer and acceptance for the sale of legal goods and services.

217.   Plaintiff Crossroads has a right under the First Amendment to use the Venue for its expressive activity on the same basis as other members of the public without regard to the content or viewpoint it seeks to express and promote.

218.   Defendants' enforcement of A.B. 893, which prohibits the sale of firearms and ammunition at the Venue with the purpose and intention (or at least the effect) of ending gun show events at the Venue, is an impermissible content-based restriction of speech. Such enforcement will have a chilling effect on Plaintiffs' First Amendment rights prior to January 1, 2021 and will constitute a direct violation of the First Amendment beginning on January 1, 2021.

219.   There is no compelling (or even legitimate) governmental interest to

45

support the ban on the commercial sales of all firearms and ammunition at the Venue, effectively shuttering gun show events at the Venue and destroying a vital outlet for the expression and exchange of ideas related to promoting and preserving the "gun culture" in California and elsewhere.

220.   As a direct and proximate result of Defendants' conduct, Plaintiff Crossroads has suffered and will continue to suffer irreparable harm, including the violation of its constitutional right to freedom of expression, entitling Plaintiff to declaratory and injunctive relief and nominal damages.

**TENTH CAUSE OF ACTION**

**Violation of Right to Free Speech Under U.S. Const., amend. I**

**42 U.S.C. § 1983**

(By Plaintiffs Walsh and Ammo Bros. Against Defendants Newsom, Becerra, Summer, Montgomery, and District)

221.   Plaintiffs incorporate by reference paragraphs 1 through 220 of this Complaint as though fully set forth herein in their entirety.

222.   The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech. . .."

223.   The First Amendment's Freedom of Speech Clause is incorporated and made applicable to the states and their political subdivisions by the Fourteenth Amendment to the United States Constitution and by 42 U.S.C. § 1983.

224.   The First Amendment does not tolerate the suppression of speech based on the viewpoint of the speaker. Public property made available for lease by community groups to engage in expressive activity must thus be available without regard to the viewpoint sought to be expressed. *Cinevision*, 745 F.2d 560. Such venues cannot be opened to some and closed to others, suppressing protected expression, absent a compelling government interest. *Id.* at 571.

225.   A.B. 893 violates the commercial free speech rights of the Plaintiffs, both on its face and as applied. This violation is especially egregious given the well-

46

established law of this Circuit with regard to the commercial speech rights at gun shows that are protected by the First Amendment. *Nordyke v. Santa Clara Cty.*, 110 F.3d 707 (9th Cir. 1997).

226.   The state of California owns the Venue, a fair venue. It is rented to the public, including community-based organizations and businesses, for its use and enjoyment, including for concerts, festivals, and industry shows.

227.   Defendants Newsom, Becerra, Summers, and Montgomery are the state and local actors responsible for ensuring that A.B. 893 is adequately enforced and thus have the authority to prosecute violations of A.B. 893.

228.   Defendant District interprets, implements, and enforces state laws and policies as regards the Venue, including A.B. 893.

229.   Plaintiffs Walsh and Ammo Bros. have attended in the past and wish to again attend Crossroads gun shows at the Venue to engage in lawful commercial speech with individual attendees.

230.   Plaintiffs Walsh and Ammo Bros. have a right under the First Amendment to use the Venue for expressive activity on the same basis as other members of the public without regard to the viewpoints they seek to express and promote.

231.   Defendants' enforcement of A.B. 893, which prohibits the sale of firearms and ammunition at the Venue with the purpose and intention (or at least the effect) of ending gun show events at the Venue, is an impermissible content-based restriction of speech. Such enforcement will have a chilling effect on Plaintiffs' First Amendment rights prior to January 1, 2021 and will constitute a direct violation of the First Amendment commercial speech rights of the Plaintiffs beginning on January 1, 2021.

232.   There is no substantial governmental interest to support the ban on the commercial sales of all firearms and ammunition at the Venue, effectively shuttering gun show events at the Venue and destroying a vital outlet for the expression and

47

exchange of ideas related to promoting and preserving the "gun culture" in California and elsewhere.

233.   Even if there were a substantial governmental interest in restricting gun shows and the commercial speech that occurs at such events, banning commercial speech about firearms and ammunition at the Venue altogether is more extensive than necessary to serve any such interest.[11]

234.   As a direct and proximate result of Defendants' conduct, Plaintiffs Walsh and Ammo Bros. will suffer irreparable harm, including the violation of their constitutional right to freedom of expression, entitling them to declaratory and injunctive relief and nominal damages.

## ELEVENTH CAUSE OF ACTION

## Prior Restraint on Right to Free Speech Under U.S. Const., amend. I
## 42 U.S.C. § 1983

(By All Plaintiffs Against Defendants Newsom, Becerra, Summer, Montgomery, and District)

235.   Plaintiffs incorporate by reference paragraphs 1 through 234 of this Complaint as though fully set forth herein in their entirety.

236.   The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech. . .."

237.   The First Amendment's Freedom of Speech Clause is incorporated and made applicable to the states and their political subdivisions by the Fourteenth Amendment to the United States Constitution and by 42 U.S.C. § 1983.

238.   The First Amendment affords special protection against policies or orders that impose a previous or prior restraint on speech. "[P]rior restraints on speech and publication are the most serious and least tolerable infringement on First

---

[11] *See Nordyke*, 110 F.3d 707 (holding that a ban on the sale of firearms on county-owned land was overbroad as abridging commercial speech associated with the sale of lawful products).

Amendment Rights." *Ass'n for L.A. Deputy Sheriffs*, 239 Cal. App. 4th at 811 (citing *Neb. Press Ass'n*, 427 U.S. at 559. A prior restraint is particularly egregious when it falls upon the communication of news, commentary, current events, political speech, and association. *N.Y. Times Co.*, 403 U.S. at 715.

239.   Prior restraint also involves the "unbridled discretion doctrine" where a policy, or lack thereof, allows for a single person or body to act at their sole discretion, without regard for any constitutional rights possessed by the person upon which the action is taken, and where there is no remedy for challenging the discretion of the decision makers. *Lakewood*, 486 U.S. at 757.

240.   The Defendants are the state and local actors responsible for enforcement of A.B. 893. Enforcement of A.B. 893 is a content-based restriction of speech and it will have a chilling effect on Plaintiffs' First Amendment rights, thus acting as a de facto prior restraint on Plaintiffs' rights prior to January 1, 2021, and will constitute a direct prior restraint on their First Amendment rights beginning January 1, 2021.

241.   Under A.B. 893, Defendant District has unfettered discretion to determine what constitutes a "sale" under the law and is thereby prohibited at the Venue.

242.   Defendants' policies and practices complained of here impose an unconstitutional prior restraint because they vest the District with unbridled discretion to permit or refuse protected expression by members of the public, including Plaintiffs.

243.   Defendants' policies and practices complained of here give unbridled discretion to local agricultural district boards and board members to decide what forms of expression members of the public may engage in on at the Venue and to ban any other expression at the whim of those boards and board members in violation of the First Amendment.

244.   As a direct and proximate result of Defendants' conduct, Plaintiffs have

49

suffered and will continue to suffer irreparable harm, including the violation of their constitutional right to freedom of expression, entitling them to declaratory and injunctive relief and nominal damages.

## TWELFTH CAUSE OF ACTION

**Violation of Right to Assembly and Association Under U.S. Const., amend. I**

**42 U.S.C. § 1983**

(By All Plaintiffs Against Defendants Newsom, Becerra, Summer, Montgomery, and District)

245.   Plaintiffs incorporate by reference paragraphs 1 through 24 of this Complaint as though fully set forth herein in their entirety.

246.   The First Amendment protects the rights to association and assembly. Indeed, "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." *NAACP*, 377 U.S. at 462.

247.   Plaintiffs are attempting to engage in their protected right to free assembly and association through lawful activities that bring together like-minded individuals to engage in lawful commerce, expressive activities, including political and educational speech, and fellowship.

248.   Defendants violate Plaintiffs' right to freedom of assembly by denying them the right to use the Venue, a "public assembly facility", to assemble and engage in political and other types of expression—a right Defendants extend to other members of the public so long as they are not meeting for the purposes of holding a gun show event.

249.   Defendants have no legitimate and substantial interest in prohibiting the sale of firearms and ammunition, effectively shuttering gun shows at the Venue, and by extension the rights of Plaintiffs to associate and assemble at the Venue.

250.   Defendants have expressly banned the sale of firearms and ammunition at the Venue, which is one of the most important draws of  gun show events. By

50

1   eliminating the sale of firearms and ammunition, Defendants have effectively

2   limited the number of vendors at the gun show and the number of individuals in

3   attendance. Thus, having a chilling effect on the First Amendment.

4        251.   Not only does A.B. 893 eliminate Plaintiffs' ability to engage in

5   discussion with event attendees about the sale and purchase of firearms and

6   ammunition, it does so unnecessarily because of California's already extensive

7   regulation of gun show events. For instance, California's mandatory 10-day waiting

8   period prevents any attendee from taking possession of firearms on the premises of

9   the Venue, requiring that they instead go to a *different* location at least 10 days later

10  to take possession of any firearm purchased at the gun show. Before a gun show

11  attendee would take possession of ammunition purchased on the premises, the

12  attendee would have to rely on a vendor to retrieve the ammunition from stock, pass

13  a background check conducted electronically by the California Department of

14  Justice, pay a fee, and wait for the vendor to upload the purchaser's personal

15  information and details of the specific ammunition being transferred. What's more,

16  no person other than security personnel or law enforcement may possess both a

17  firearm and ammunition for that firearm at the same time, with the exception of

18  vendors who are selling both.

19        252.   But even if Defendants had a "legitimate and substantial" interest in

20  limiting a key aspect of gun show events, and thus barring Plaintiffs from freely

21  assembling at the Venue, they have imposed an unconstitutional and overly broad

22  restriction on Plaintiffs' rights to assembly by prohibiting the sale of firearms and

23  ammunition at the Venue.

24                          **THIRTEENTH CAUSE OF ACTION**

25  **Violation of the Right to Equal Protection Under U.S. Const., amend. XIV**

26                              **42 U.S.C. § 1983**

27  (By All Plaintiffs Against Defendants Newsom, Becerra, Summer, Montgomery,

28                                and District)

FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

253.   Plaintiffs incorporate by reference paragraphs 1 through 252 of this Complaint as if fully set forth herein in their entirety.

254.   The Fourteenth Amendment to the United States Constitution, enforceable under 42 U.S.C. § 1983, provides that no state shall deny to any person within its jurisdiction the equal protection of the laws.

255.   Generally, equal protection is based upon protected classes of person who are similarly situated; however, individuals who suffer irrational and intentional discrimination or animus can bring claims of equal protection where the government is subjecting only the Plaintiffs to differing and unique treatment compared to others who are similarly situated, *Engquist*, 553 U.S. 591, even if not based on group characteristics, *Village of Willowbrook*, 528 U.S. 562.

256.   Disparate treatment under the law, when one is engaged in activities that are fundamental rights, is actionable under the Equal Protection Clause of the Fourteenth Amendment. *Mosley*, 408 U.S. 92; *Carey*, 447 U.S. 455.

257.   Although Plaintiff Crossroads operates a legal and legitimate business and the Venue is suitable for the purposes of hosting a gun show at its public facility, as demonstrated by over 30 years of uninfringed use of the Venue, A.B. 893 prevents Plaintiffs from equally participating in the use of the publicly owned venue by unconstitutionally eliminating Plaintiffs' ability to freely conduct business transactions and freely express their beliefs with like-minded people.

258.   Defendants' refusal to permit Plaintiffs equal access to the Venue for its promotion of gun shows does not further any compelling governmental interest.

259.   Defendants' refusal to allow Plaintiffs equal use of the public facility while continuing to allow contracts for the use of the facility with other similarly situated legal and legitimate businesses is a violation of Plaintiffs' right to equal protection under the law because it is based on a "bare desire to harm a politically unpopular group." *Moreno*, 413 U.S. at 534.

260.   As a direct and proximate result of Defendants' conduct, Plaintiffs have

52

suffered irreparable harm, including the violation of their constitutional right to equal protection under the law, entitling them to declaratory and injunctive relief and nominal damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

1.      A declaration that the District's September 11, 2018 moratorium on gun show events violates the free speech rights of Plaintiffs CRPA, South Bay, SAF, and Individual Plaintiffs Bardack, Diaz, Dupree, Irick, and Walsh under the First Amendment to the United States Constitution;

2.      A declaration that the District's September 11, 2018 moratorium on gun show events violates  the free speech rights of Plaintiff Crossroads under the First Amendment to the United States Constitution;

3.      A declaration that the District's September 11, 2018 moratorium on gun show events violates  the free speech rights of Plaintiffs Walsh and Ammo Bros. under the First Amendment to the United States Constitution;

4.      A declaration that the District's September 11, 2018 moratorium on gun show events violates  the free speech rights of all Plaintiffs under the First Amendment to the United States Constitution because it imposes a prior restraint on their speech;

5.      A declaration that the District's September 11, 2018 moratorium on gun show events violates  the rights of assembly and association of all Plaintiffs under the First Amendment to the United States Constitution;

6.      A declaration that the District's September 11, 2018 moratorium on gun show events violates  the rights of all Plaintiffs to equal protection under the law per the Fourteenth Amendment to the United States Constitution;

7.      A declaration that the District's September 11, 2018 moratorium on gun show events violates constitutes a conspiracy to violate the civil rights of Plaintiffs under 42 U.S.C. § 1985.

FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

8.      A declaration that A.B. 893 violates the free speech rights of Plaintiffs CRPA, South Bay, SAF, and Individual Plaintiffs Bardack, Diaz, Dupree, Irick, and Walsh under the First Amendment to the United States Constitution;

9.      A declaration that A.B. 893 violates the free speech rights of Plaintiff Crossroads under the First Amendment to the United States Constitution;

10.     A declaration that A.B. 893 violates the free speech rights of Plaintiffs Walsh and Ammo Bros. under the First Amendment to the United States Constitution;

11.     A declaration that A.B. 893 violates the free speech rights of all Plaintiffs under the First Amendment to the United States Constitution because it imposes a prior restraint on their speech;

12.     A declaration that A.B. 893 violates the rights of assembly and association of all Plaintiffs under the First Amendment to the United States Constitution;

13.     A declaration that A.B. 893 violates the rights of all Plaintiffs to equal protection under the law per the Fourteenth Amendment to the United States Constitution;

14.     An injunction prohibiting Defendant Ross, as Secretary of the California Department of Food & Agriculture, from allowing the Defendants District, Shewmaker, and Valdez to decide who may hold events at the Venue, a public assembly facility, based on the viewpoint of or animus towards the event promoter, vendors, or participants.

15.     An injunction prohibiting all Defendants or any of their agents, from discriminating against members of the public in the use of state-owned, District-managed facilities based on the viewpoint of or animus towards the event promoter, vendors, or participants.

16.     An injunction compelling Defendants to allow Plaintiff Crossroads to contract for, promote, and hold its gun shows at the Venue on the 2019 dates

promised via email from Defendants to Plaintiff Crossroads on or about July 5, 2018;An injunction prohibiting all Defendants or any of their agents from enforcing A.B. 893;

17.     An order for damages according to proof;

18.     An order for punitive damages against Defendants District, Shewmaker, and Valdez, for action taken with malice, oppression, and wanton disregard for the law in engaging in political viewpoint discrimination;

19.     An award of costs and expenses, including attorney's fees, pursuant to 42 U.S.C. § 1988 or other appropriate state or federal law; and

20.     Any such other relief the Court deems just and equitable.

Dated:  March 27, 2020                    **MICHEL & ASSOCIATES, P.C.**

                                          *s/ C. D. Michel*
                                          C. D. Michel
                                          Counsel for Plaintiffs B & L Productions, Inc.,
                                          Barry Bardack, Ronald J. Diaz, Sr., John
                                          Dupree, Christopher Irick, Lawrence Walsh,
                                          Maximum Wholesale, Inc., California Rifle &
                                          Pistol Association, Incorporated, South Bay
                                          Rod and Gun Club, Inc.

Dated:  March 27, 2020                    LAW OFFICES OF DON KILMER

                                          *s/ Don Kilmer*
                                          Don Kilmer
                                          Counsel for Plaintiff Second Amendment
                                          Foundation

FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

Case Name: *B & L Productions, Inc., et al. v. 22nd District Agricultural Association, et al.*
Case No.: 3:19-cv-00134 CAB (NLS)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**NOTICE OF LODGING [PROPOSED] FIRST SUPPLEMENTAL COMPLAINT FOR MONETARY, DECLARATORY & INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Xavier Becerra
Attorney General of California
P. Patty Li
Deputy Attorney General
E-mail: patty.li@doj.ca.gov
Natasha Saggar Sheth
Deputy Attorney General
E-mail: natasha.sheth@doj.ca.gov
Chad A. Stegeman
Deputy Attorney General
E-mail: chad.stegeman@doj.ca.gov
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
    *Attorneys for Defendants*

I declare under penalty of perjury that the foregoing is true and correct.

Executed March 27, 2020.

*s/ Laura Palmerin*
Laura Palmerin